United States District Court
Southern District of Texas
**ENTERED**
April 07, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MAGDALENA ANAYA, | § |
| Plaintiff, | § § § |
| V. | § CIVIL ACTION NO. H-14-2065 |
| HOUSTON INDEPENDENT SCHOOL DISTRICT, et al., | § § § § |
| Defendants. | § § |

## MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 636(b)(1)(B), all pending motions were referred by the District Judge to the undersigned Magistrate Judge. Pending is Defendant Houston Independent School District's Motion for Summary Judgment (Document No. 31). Having considered that motion, Plaintiff's response (Document No. 36), the remaining claims alleged by Plaintiff in her Amended Complaint (Document No. 16), and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's remaining claims be DISMISSED WITH PREJUDICE.

### I. Background

Plaintiff Magdalena Anaya ("Anaya"), a Hispanic female of Mexican origin, and a long-time employee of Defendant Houston Independent School District ("HISD"), filed this suit following the termination of her employment on June 14, 2012. In an Order granting Defendants' Motion for Partial Dismissal, Anaya's claims for disparate impact discrimination under Title VII, due process violations, intentional infliction of emotional distress, breach of contract, and promissory estoppel

were dismissed for failure to state a claim (Document Nos. 24 & 26). That left only claims against Defendant Houston Independent School District ("HISD") for disparate treatment discrimination based on her race/national origin and sex, and her claim for retaliation. HISD has now moved for summary judgment on those remaining claims, arguing that it has a legitimate, non-discriminatory reason for its failure to promote Anaya and for her termination, and that there is no summary judgment evidence that raises a genuine issue of material fact on whether the reasons were a pretext for discrimination and/or retaliation.

II.     **Summary Judgment Standard**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

## III. Discussion – Disparate Treatment Discrimination Claims

In her remaining disparate treatment claim, Anaya alleges that HISD discriminated against her based on her race (Hispanic), national origin (Mexico), and sex (female) when it failed to promote her to a project manager position in early November 2011, and when it subsequently terminated her employment in June 2012. In its Motion for Summary Judgment, HISD argues that summary judgment is warranted on Anaya's disparate treatment claim(s) because: (1) there is no evidence that HISD's failure to promote Anaya and/or her subsequent termination were based on Anaya's sex; (2) Anaya was not "qualified" for the position she sought as a promotion, and therefore she cannot establish a *prima facie* case of discrimination; (3) HISD has articulated legitimate, non-

discriminatory reasons for both its failure to promote Anaya and its subsequent termination of Anaya; and (4) there is no summary judgment evidence that raises a genuine issue of material fact on whether HISD's legitimate, nondiscriminatory reasons were "pretext" for discrimination.

Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a)(1). To maintain a claim for disparate treatment discrimination under Title VII, a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias. *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)). Workplace comments that are alleged to be direct evidence of discrimination are only considered as such if the comments are: "'1) related to the protected class of persons of which the

plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Jackson*, 602 F.3d at 380 (quoting *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)). If the alleged workplace comment does not meet these four requirements, the comment cannot be considered direct evidence of discrimination, and is treated as a "stray remark." *Id.*

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of disparate treatment discrimination under Title VII, § 1981, and the Texas Labor Code requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). A *prima facie* case of disparate treatment under the ADEA is similar, but not identical, and requires proof that the plaintiff: (1) was a member of the protected class (over 40); (2) was qualified for the position; (3) suffered an adverse employment decision; and (4) was either "replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." *Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013); *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken*

5

*as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas,* 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *see also Jackson*, 602 F.3d at 378-79 ("A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"). A plaintiff can avoid summary judgment on a Title VII claim if, at the third step of the burden shifting analysis, the plaintiff can "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720.

This is not a case in which there is any direct evidence of discrimination.[2] As such, the *McDonnell Douglas* burden shifting framework applies to Anaya's claims.

HISD has moved for summary judgment on Anaya's sex discrimination claim, pointing to Anaya's deposition testimony that she could "not identify any reason for believing that [she] [was]

---

[2] Anaya testified in her deposition about several derogatory race/national original based comments that were made by her supervisors. Anaya Deposition at pp. 99-105 (Document No. 31-31 at 27-28). Notwithstanding Pat Collins' denial that she ever made such comments, *see* Affidavit of Patricia Collins (Document No. 31-35), none of the comments are direct evidence of discrimination because none was made in connection with any employment decision – much less the employment decision related to Anaya in this case.

discriminated against based on [her] being female." Anaya Deposition at 215 (Document No. 31-31 at 56). Anaya has not, in her response to HISD's Motion for Summary Judgment, advanced any argument, or pointed to any summary judgment evidence, that would support a sex discrimination, disparate treatment claim. As such, HISD is entitled to summary judgment on that claim.

HISD has also moved for summary judgment on that part of Anaya's race/national origin claim which is based on HISD' failure to promote her to a project manager position in November 2011. According to HISD, and the summary judgment evidence it has submitted, the person who was hired for that project manager position, Jennifer Huenemeier, was more qualified than Anaya. Anaya does not dispute this, *at all*, in her response to HISD's Motion for Summary Judgment. In fact, Anaya did not address, *at all*, her claim that she was discriminated against in connection with her application for the project manager position. HISD is therefore entitled to summary judgment on that part of Anaya's race/national origin discrimination claim which is based on HISD's failure to hire/promote her to a project manager position in November 2011.

As for Anaya's race/national origin claims that are premised on her termination in 2012, this is the focus of Anaya's Response to HISD's Motion for Summary Judgment, and it is this claim that requires a close review of the summary judgment evidence under the *McDonnell Douglas* burden-shifting framework. Assuming, without deciding, that Anaya has established a *prima facie* case of race/national origin discrimination related to her termination, HISD has, in turn, articulated a legitimate, non-discriminatory reason for that termination. That reason was included in Anaya's June 1, 2012, termination letter, which stated as follows:

> This letter serves to advise you that a recommendation has been made to terminate your noncontract employment pursuant to HISD Board Policy DCD (LOCAL). This policy provides that a noncontract employee is employed at-will and may be

> terminated for any reason not prohibited by law, or for no reason. You are hereby officially notified that your employment with the Houston Independent School District is terminated, with an effective date of June 14, 2012.
>
> The recommendation is based on findings by your supervisor, Ms. Pat Collins, Sr. IT Manager, that your job performance has been unsatisfactory. Some examples include, but are not limited to: excessive unscheduled absences, failure to turn in weekly reports, and failure to follow directives.

(Document No. 31-13). Anaya contends that HISD's proffered reason(s) is not HISD's true reason and is, instead, a pretext for race/national origin discrimination on the part of her supervisor, Pat Collins. Anaya points, in support of her pretext argument, to the deposition of Pat Collins, who she claims offered inconsistent testimony about both Anaya's performance as well as the other two bases for Anaya's termination. In particular, Anaya points to Collins' testimony that she could not characterize Anaya's work as "unsatisfactory," Collins' assessment of Anaya's performance in March 2010 as exceeding expectations, and Collins' admission that she did not know all of HISD's absence policies but yet based her termination of Anaya, in part, on Anaya's unscheduled absences. Anaya also makes much of the fact there are no poor performance evaluations in her employee file, with the closest thing to one being a July 2010 "developing" assessment of her performance as an associate project manager, and no record of any employee warning or disciplinary action related to her absences. Collins' deposition testimony, including those parts of it relied upon by Anaya, even when taken in a light most favorable to Anaya as the non-movant, do not raise a genuine issue of material fact on pretext.

HISD's summary judgment evidence shows, and Anaya does not dispute, that her position as a technology project supervisor was eliminated in 2009, and she was, with her supervisor, Pat Collins' support, placed in a new-created position in August 2009 as an associate technology project

manager. (Document No. 31-4 at 3; Document No. 31-5). In that new position, Anaya's performance was evaluated by Collins in 2010 over a seven month period of time. Collins testified at her deposition that as part of an interim review in March 2010, she found that Anaya was exceeding expectations. Collins Deposition at 21-22 (Document No. 36-2 at 12). By July 2010, however, in the final review, Collins rated Anaya's performance in many categories as "developing." (Document No. 31-6). Collins' deposition testimony is consistent with those performance ratings and, as she explained in her deposition, from March to July 2010, Anaya began to have problems completing projects she was assigned:

> Q: So she went from being a great employee, an excellent employee, to all of a sudden being a poor employee, you would say?
>
> A: No, it wasn't overnight, you know. She would have assignments that she wouldn't complete. We would try to work through them. We would, you know, talk through things, but she was never able to complete them. She could complete the duties from her previous role.
>
> Q: And what duties – what were those duties that were – were they added duties or were they just completely different duties?
>
> A: So she had worked a lot in getting contracts through our system. At that point we had – it was basically a walkthrough system. In other words, a contract would come up and you had to go to different people in different roles to be able to get the contract approved, signed off and everything. And so she was very successful in getting that done.
>
> She kept doing that because our CIO or chief technology officer, whoever that was at the time, agreed she was very good at getting that done. But when assigning, you know, projects that she had to analyze and think through and come up with solutions, it was – it was more difficult for her.
>
> Q: So her – the – what you're telling me, I think, and correct me if I'm wrong, was that you – her problem was in her analytical skills. She was lacking in that area?
>
> A: I don't know. I just – she was having difficulty completing tasks.

Collins Deposition at pp. 14-16 (Document No. 36-2 at 10). Anaya has offered no summary judgment evidence to controvert this assessment by Collins – that she was having problems completing tasks. Anaya also does not dispute, and has offered no summary judgment evidence to refute, Collins' deposition testimony that she did not prepare and/or submit the daily or weekly reports Collins requested of her after she returned from FLMA leave in January 2012.[3] Finally, Anaya does not dispute, and has offered no summary judgment evidence to refute, Collins' deposition testimony, and HISD records, which show that she had over 35 non-FLMA absences over a 4 month period of time, between January 9, 2012 and May 9, 2012. (Document Nos. 31-11; 31-15). In all, Anaya's summary judgment evidence does not raise a genuine issue of material fact as to whether she was timely completing her tasks, following directions, or was frequently absent from work. Anaya has therefore, not raised a genuine issue of material fact on whether HISD's legitimate, nondiscriminatory reason(s) for her termination was either not true, or not worthy of credence. While Anaya also tries to: (1) make much of the fact that Collins did not truthfully acknowledge during her deposition other complaints of discrimination that had been made against her, and (2) make much of her own deposition testimony reciting a handful of racial/national origin slurs about Mexicans and Hispanics she claims he heard Collins make over the course of several years, Anaya has not tied any of that summary judgment evidence to HISD's stated, legitimate and non-discriminatory reasons for her termination. That is what she has to do at the final phase of the *McDonnell Douglas* burden shifting framework, and she simply has not done it.

---

[3] Anaya was on FMLA leave between November 15, 2011, and January 9, 2012. The requirement that she submit daily reports to Collins of her work was contained in an email from Collins to Anaya dated November 7, 2011, before Anaya's FMLA leave.

Because the summary judgment evidence does not raise a genuine issue of material fact on whether the reasons proffered by HISD for Anaya's termination were "a pretext for discrimination." summary judgment is warranted on Anaya's race/national origin disparate treatment claim(s).

## IV. Discussion – Retaliation Claim

Anaya also alleges in a separate claim that HISD retaliated against her after she raised complaints of discrimination with her supervisor, Pat Collins, in November 2011, and thereafter filed an EEOC charge in December 2011. HISD, in its Motion for Summary Judgment, maintains that there is no temporal proximity between Anaya's alleged protected activity and her termination over six months later, and that there is no summary judgment evidence that raises a genuine issue of material fact on whether HISD's legitimate, nondiscriminatory reason for Anaya's termination was a pretext for retaliation.

Title VII proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3. Retaliation claims under Title VII require a plaintiff to first establish a *prima facie* case of retaliation, with proof that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is any action taken by an employer that is harmful enough that it

"might have dissuaded a reasonable worker from" engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (making it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions); *see also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g.*, *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation). At the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Sherrod*, 132 F.3d at 1122. If the defendant carries this burden, the plaintiff must prove that the stated nondiscriminatory reason for the adverse employment action is a "pretext" for discrimination by either directly persuading "the trier of fact that 'a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence'" *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 739-40 (Tex. App.–14th Dist. 1999)

(quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To carry the ultimate burden on a retaliation claim, a plaintiff must also show that a defendant would not have taken the adverse employment action "but for" the plaintiff's participation in the protected activity. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

Here, again assuming, without deciding, that Anaya has established a *prima facie* case of retaliation, the burden shifts to HISD to articulate a legitimate, nondiscriminatory reason for Anaya's termination. As set forth above, HISD has done do, identifying three legitimate, nondiscriminatory reasons for Anaya's termination in June 2012. Anaya argues, in response to HISD's Motion for Summary Judgment and in an attempt to establish pretext, that Collins bullied her, and imposed "overly strict requirements" on her after she complained to Collins about Collins' discrimination, and after she filed an EEOC complaint. This, Anaya maintains, shows that Collins was both retaliating against her for speaking out about discrimination, and setting her up to be terminated.

The summary judgment evidence in the record does not show, or in any way suggest, that Anaya would not have been terminated "but for" her protected activity. What the evidence does show is that Anaya's performance review in her position as an associate project manger was less than stellar in July 2010 (Document No. 31-6), and her relationship with Collins deteriorated in November 2011, after she was not selected for a position as a project manager. In a meeting with Collins on November 2, 2011, Anaya informed her that she was planning on applying for a job with another school district. After Anaya took offense to Collins' question about whether the position was a clerical one, the two met again on November 3, 2011, at which time Anaya raised the issue of discrimination in Collins' work assignments and completion deadlines. Anaya Deposition at pp. 131-138 (Document No. 31-31 at 35-37). Collins followed that meeting with lengthy email on

13

November 7, 2011, in which she addressed Anaya's complaints about her work load, made comments about Anaya's poor time management skills, and required Anaya to do the following:

- Stop and desist from relaying to customers in any way that your workload is excessive.

- Report to me at the end of each day via email the number of technology queue items you have approved and how many are pending awaiting your research and the amount of time spent in the technology queue area.

- Report to me at the end of each day the status of IT-related contracts that are pending or have been completed.

- Attend sensitivity training, which will be scheduled by the Employee Relations Department.

(Document No. 31-22 at 3-4). After receiving the email, Anaya left work and did not return until November 15, 2011, whereupon she requested FLMA for "Depression. Need to attend Program Therapy." (Document No. 31-7). Anaya's request for FMLA leave was approved and she took FMLA leave from November 15, 2011, to January 9, 2012. (Document Nos. 31-7, 31-11). When she returned to work on January 9, 2012, Anaya's work responsibilities were significantly reduced *see* Anaya Deposition at pp. 82-85 (Document No. 31-31 at 23); email exchange, dated January 10, 2012 (Document No. 31-26), but Collins continued to insist, in an email exchange, that Anaya provide her with daily reports about her work assignments and work progress. (Document No. 31-26). Collins also asked Anaya, and the others she supervised, to provide her with weekly reports, but Anaya, from her return to work on January 9, 2012, to her termination in June 2012, provided only one such weekly report to Collins. Collins Deposition at pp. 54-56 (Document No. 31-32 at 16) and emails (Document No. 31-23 at 23-34). In addition, as reflected in an email from Kathy Elliott-Basile to Collins, and numerous emails from Collins to Anaya, Anaya had not completed the

14

task assigned to her by Elliot (spread-sheet project/project dashboard) or the audio conferencing project assigned to her by Collins (Document Nos. 31-14; 31-25).

In all, the summary judgment evidence shows, and Anaya does not dispute, that she only provided one weekly report to Collins, that she did not timely complete the audio conference project Collins had assigned her, that she had problems with the project assigned to her by Elliott, and that she was absent from work, between January 9, 2012 and May 9, 2012, about 40 days, approximately 5 of which were intermittent FMLA leave days, and the rest of which were not. The summary judgment evidence in the record fully supports the reason(s) articulated by HISD for Anaya's termination. (Document No. 31-13) ("job performance has been unsatisfactory. Some examples include, but are not limited to: excessive unscheduled absences, failure to turn in weekly reports, and failure to follow directives").

As for any independent evidence of pretext, there is none. Instead, Anaya relies upon what she considers was "unfair" treatment following her complaints of discrimination, but she makes no showing that others were treated any differently than she. The summary judgment evidence in the record is that Anaya was not singled out to complete weekly reports – Collins testified that all of those under her supervision were required to do so, and all but Anaya complied. Collins Deposition at 54-56 (Document No. 31-32 at 16). In addition, the evidence shows that Anaya's workload was reduced following her complaints about her work load, which she maintained in November 2011, was discriminatory. Thus, while the summary judgment evidence does show that there was conflict between Collins and Anaya in November 2011, the summary judgment evidence also shows that upon Anaya's return from FMLA leave in January, 2012, through the date of her termination, Collins significantly reduced Anaya's work load and assigned her to work with a mentor (Elliott). There is,

15

upon this record, simply no summary judgment evidence to support a conclusion that HISD's reason(s) for Anaya's termination was a pretext for retaliation, and no summary judgment evidence that "could lead a reasonable fact-finder to conclude that" Anaya's termination in June 2012 "would not have occurred 'but for'" [Anaya's] decision to engage in an activity protected by Title VII." *Alkhawaldeh v. Dow Chemical Co.*, ___ F.3d ___, 2017 WL 1018340 (5th Cir. March 15, 2017). Therefore, HISD is also entitled to summary judgment on Anaya's retaliation claim(s).

## V. Conclusion and Recommendation

Based on the foregoing, and the conclusion that there is no genuine issue of material fact and that Defendant HISD is entitled to summary judgment on Plaintiff Anaya's remaining discrimination and retaliation claims, the Magistrate Judge

RECOMMENDS that Defendant HISD's Motion for Summary Judgment (Document No. 31) be GRANTED and that Plaintiff Magdalena Anaya's remaining claims against Defendant HISD for disparate treatment discrimination and retaliation under Title VII be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day

16

period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 6th day of April, 2017.

Frances H. Stacy
United States Magistrate Judge